UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE ) | |
| APPLICATION OF THE ) | |
| UNITED STATES OF AMERICA FOR ) | MISC. NO. 11-449 (JMF/RCL) |
| AN ORDER AUTHORIZING ) | |
| DISCLOSURE OF HISTORICAL ) | |
| CELL SITE INFORMATION FOR ) | |
| TELEPHONE NUMBER ███████ ) | Filed Under Seal |

## MEMORANDUM AND ORDER

Before the Court is the government's Motion to Vacate and Amended Motion for Review

[6] of Magistrate Judge Facciola's August 17, 2011 Order denying an application by the United

States for an order directing ████████ to disclose certain cellular phone transactional

records. Upon consideration of the government's amended motion and the August 17, 2011

Order, the motion to vacate and the amended motion will be GRANTED, and the Order will be

REVERSED and REMANDED.

## I. BACKGROUND

The government submitted an application [1] on August 9, 2011 for an order to compel

████████ to disclose historical records of cell-site location information (CSLI)[1] and other

information relating the use of cellular telephone number ████████, pursuant to Section

2703(d) of the Stored Communications Act (Title II of the Electronic Communications Privacy

Act). In support of the application, the government outlined its investigation of ████████

---

[1] CSLI includes the cell-site tower used to transmit a cellular phone call, and, if applicable, the specific 120-degree face of the tower utilized. Because cellular phones typically broadcast to the closest cell-site tower in order to provide the user with the strongest reception, CSLI can provide an approximate location of an individual at the time the individual makes a phone call. The approximation will be more accurate through triangulation calculations, and particularly where towers are grouped closely together.

1

U.S. District and Bankruptcy Courts
for the District of Columbia
TRUE COPY
ANGELA D. CAESAR, Clerk

By _____
Deputy Clerk



alleged participation in a ███████████ armed robbery of armored truck guards. According to the government, ████████ had implicated ████ in the robbery by alleging that ████ facilitated the principals' getaway. The informant alleged that 1) after the robbery, the principals fled to ████████, which is located ███████████████; 2) shortly thereafter, ████ drove the principals from ██████ to ███████████████████████; and 3) ████ received a share of the robbery's proceeds. Based on this information, the government sought CSLI and other information for cellular telephone number ███████, apparently owned by ███████████████████████.

Magistrate Judge John Facciola entered an Order denying the government's application on August 17, 2011. In his Order, Magistrate Judge Facciola reasoned that *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), required the government to apply for a search warrant under Rule 41 of the Federal Rules of Criminal Procedure in order to compel disclosure of the information sought. Magistrate Judge Facciola therefore denied the government's Section 2703(d) application without prejudice to an application pursuant to Rule 41.

The government submitted a Motion for Review [2] seeking to overturn Magistrate Judge Facciola's determination. In its Motion for Review, the government provided a wholly erroneous description of the underlying facts. Not only were the targeted cellular telephone number and cellular service provider misstated, but the government's description of the investigation at issue was also thoroughly mistaken. It appears to the Court that the government recounted a separate and unrelated investigation of a suspect, ███████, for a separate and unrelated crime, in which the government had previously sought and obtained a Section 2703(d) order from Magistrate Judge Facciola. *In the Matter of the Application of the United States of*

2

*America*, Misc. No. ▆▆▆ (D.D.C. Aug. 5, 2011).[2] The same Assistant U.S. Attorney signed both the application in Misc. No. ▆▆▆ and the Motion for Review in the instant case.

As incorrectly asserted in the government's original Motion for Review, the application at issue in this case involved an investigation of a suspect in an attempted armed robbery ▆▆▆ ▆▆▆ That morning, an individual ▆▆▆▆▆▆▆▆▆ demanded money from armored car company guards while armed with a handgun; ▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Shortly thereafter, at about ▆▆▆ the attempted robbery occurred. ▆▆▆ cellular phone displayed three calls to phone number ▆▆▆ the morning of the robbery, between ▆▆ a.m. and ▆▆ a.m.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆ Beginning at ▆▆ a.m. on ▆▆▆, several calls were placed between the phone number ▆▆▆ and the targeted cellular telephone number ▆▆▆ lasting from between six seconds to over eleven minutes. As a result, the government sought CSLI and other information for the ▆▆▆ number from ▆▆▆

Based in part on the recitation of the facts in the government's original Motion for Review, the Court issued an order [3] on September 12, 2011, granting the motion and reversing

---

[2] The government's Proffer of Facts [7] states that the application from which the facts in the amended motion were drawn was Misc. No. ▆▆▆ However, the correct docket number appears to be ▆▆▆

Magistrate Judge Facciola's order. The Court found that *Maynard* did not foreclose a Section 2703(d) application, and that the government had satisfied the relevant evidentiary standard for an order.

Had the Court carefully scrutinized the facts as described in the underlying application submitted to Magistrate Judge Facciola and compared those facts with those recounted in the government's original Motion for Review, the Court would have noticed the government's error. However, the Court saw no reason to treat with skepticism the government's representations in its original Motion for Review. Instead, the Court accepted the government's statement of facts at face value – something this Court will not do in the future. In subsequent cases this Court will be obligated to cross check the government's motion with the original order at issue and other relevant documents in the record each and every time.

Although the government filed its original Motion for Review on August 31, 2011, it did not approach the Court about the factual errors until after the Court's September 12 Order, and its corresponding Order [5] requiring the government to file a proposed redacted version of the Court's September 12 Memorandum and Order that could be unsealed. After that point, government counsel informed the Court regarding the situation, and on September 16, 2011 submitted the instant Motion to Vacate. In that motion, the government represented that:

> [A]s a result of the undersigned Assistant United States Attorney's medical leave, there was a mis-communication regarding which Historical Cell Site Application had been denied by Magistrate Judge Facciola on August 17, 2011. As such, the Government's initial Memorandum and proposed Order filed with this Court unfortunately misidentified, among other things, the cellular service provider and the subject telephone number. The government apologizes for this inadvertent error and moves to vacate the September 12, 2011 Order.

The government's motion admits misidentification of the cellular service provider and the subject telephone number but does not make clear that the entirety of the factual representations in the government's original motion for review were incorrect. Specifically, the government does not explicitly state that the investigation as described in the original motion was a distinct investigation unrelated to the one at issue in this case. Despite the inadequacy of the government's admissions in its Motion to Vacate, the Court will quite obviously grant that motion.

Following the Motion to Vacate, the government submitted a Proffer of Facts and Circumstances Surrounding the Appeal of the Magistrate Judge's Decision Concerning the Government's Application [7] on September 30, 2011. The Proffer sets out in explicit detail the series of events and the nature of the mistakes giving rise to the situation described in this Memorandum and Opinion. The Court appreciates the U.S. Attorney's Office's investigation of and admissions regarding this case, and is pleased to see that the Office plans to adopt corrective actions aimed at preventing repetition of the errors committed.

Along with its Motion to Vacate, the government submits an Amended Motion for Review of Magistrate Judge Facciola's order. As it did in its original motion, the government argues for reversal of the order on the grounds that 1) the plain language of Section 2703(d) does not require the government to apply for a warrant, and 2) *Maynard* does not apply to cellular telephone companies' business records.

This Court agrees that Section 2703(d) permits the government to seek disclosure of historical CSLI from cellular telephone companies without securing a warrant, and that *Maynard* does not control the question. However, whether the government has provided "specific and articulable facts showing that there are reasonable grounds to believe that the" requested records

5

"are relevant and material to an ongoing criminal investigation," 18 U.S.C. § 2703(d), remains to be decided. Accordingly, the Court will reverse the August 17, 2011 Order, and remand for further consideration by Magistrate Judge Facciola regarding whether the government has met its evidentiary burden.

## II. DISCUSSION

### A. The Scope of the Stored Communications Act

This Court begins with an analysis of the statutory framework of the SCA. The government applied for its order under Section 2703(d) of the SCA, which provides that:

> A court order for disclosure under subsection (b) or (c) may be issued by any court . . . only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.

In turn, Section 2703(c)(1) provides that:

> A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber of such service . . . .

Thus, if historical CSLI is a "record or other information" pertaining to a customer's use of a cellular telephone company's "electronic communication service," Section 2703(d) provides a mechanism for the government to compel its discovery in lieu of a warrant.

Whether historical CSLI is a "record or other information" is the simpler of the two questions: CSLI is information collected and recorded incident to a customer's placement of a cellular telephone call. *See In re Application of the United States*, 620 F.3d 304, 310 (3d Cir. 2010) (noting that historical CSLI "consists of records of information collected by cell towers

6

when a subscriber makes a cellular phone call").[3] More complicated is whether cellular telephone service is an "electronic communication service" as defined by the SCA. Under 18 U.S.C. § 2510(15), an "electronic communications service" is a service that provides "users . . . the ability to send or receive wire or electronic communications." Accordingly, to be a considered an "electronic communications service," the placement of cellular telephone calls must be either "wire communications" or "electronic communications."

The government does not argue that the placement of cellular telephone calls constitutes "electronic communications." A close reading of the statute explains why. The SCA's definition of "electronic communications" excludes "any communication from a tracking device," 18 U.S.C. § 2510(12)(C), and "tracking device" is elsewhere defined as "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b). A cellular telephone is a presumably a "tracking device" by virtue of its ability to track the movement of its users through collection of CSLI (or global positioning system data), and thus the use of such a device cannot fall within the SCA's definition of "electronic communications." See, e.g., In re Application of the United States, 497 F. Supp. 2d 301, 310-11 (D.P.R. 2007) (holding that a cellular telephone is a tracking device under § 3117(b)).

Instead, the government argues that the placement of cellular telephone calls constitutes "wire communications." The SCA defines "wire communications" as:

---

[3] Were the government seeking an order for prospective or real-time CSLI, the question of whether the information constitutes a "record" – or whether other statutes, in conjunction with the SCA, provide the government with the requisite authority – would be closer, see id. at 310 n.6 (collecting relevant cases). However, as the government is applying only for historical CSLI, these issues are not present. See, e.g., In re Application of the United States, 402 F. Supp. 2d 597, 601 (D. Md. 2005) ("Historical cell site information may be covered by 18 U.S.C § 2703(c), but such information is not at issue here." (emphasis in original)).

7

> Any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . .

18 U.S.C. § 2510(1). This definition presents an ambiguity regarding the meaning of "by the aid of wire, cable, or other like connection." The utility of a cellular telephone is its ability to make and receive phone calls in absence of a physical connection to any communications facilities. There is no "wire, cable, or other like connection" *directly* "between the point of origin," namely, the cellular telephone, "and the point of reception." However, placement of a cellular phone call requires use of cell-site towers, which in turn make use of numerous wire, cable and other connections. In that regard, a cellular phone call does involve, at least "in part," "the use of facilities for the transmission of communications by the aid of wire, cable or other like connection." Even though the communications technology does not utilize a direct connection between the point of origin and the point of reception, the network still relies on "facilities," namely cell towers, that are aided by "wire, cable, or other like connection[s]." Cellular phone calls are therefore "wire communications" under the meaning of the SCA, and the government may appropriately compel disclosure of records relating to a subscriber's use of such services under Section 2703(d).[4]

## B. *Application of* Maynard

This Court agrees with the government that the text of the SCA permits the government to apply for compelled disclosure of CSLI records relating to a customer's past use of a cellular telephone company's phone services without meeting the probable cause requirement for a

---

[4] Notably, this logic would not apply to text messages, which do not involve any "aural transfer."

8

warrant. *See, e.g., Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 208 (1946) (holding that the probable cause requirement does not apply to compulsory process).

The Court of Appeals' opinion in *United States v. Maynard* does not compel a contrary result. The Court in *Maynard* determined that law enforcement installation of a GPS tracking device on a suspect's car that continuously registers the car's location constitutes a "search" under the Fourth Amendment. *United States v. Maynard*, 615 F.3d 544, 555-56 (D.C. Cir. 2010). In so holding, the Court did not address compelled disclosure under Section 2703(d) – indeed, the law enforcement officers in *Maynard* sought no official process sanctioning their conduct before installing the GPS device at issue. *See id.* at 555. *Maynard* thus does not bear on the relevant evidentiary standard under Section 2703(d).

In finding that *Maynard* applied to this case, Magistrate Judge Facciola presumably concluded that obtaining CSLI is tantamount to the sort of continuous GPS surveillance at issue in *Maynard*. If the analogy holds, collection of historical CSLI may constitute a "search" that requires a warrant under the Fourth Amendment, the SCA notwithstanding. *Cf. In re Application of the United States*, 620 F.3d at 308-09 (describing magistrate judge's opinion comparing collection of historical CSLI to installation of a tracking device); *In re United States Order*, 736 F. Supp. 2d 578, 595 & n.6 (E.D.N.Y. 2010) (arguing that "[s]tatutory authority . . . is not sufficient if such authority purports to allow, without a showing of probable cause, a search or seizure that must be considered unreasonable under the Fourth Amendment").

However, an analogy between collection of historical CSLI and real-time GPS monitoring fails to adhere to the reasoning of the Supreme Court in *Smith v. Maryland*. In that case, the Court determined that the use of a pen register device to record the phone numbers dialed on a customer's phone did not constitute a "search" under the meaning of the Fourth

9

Amendment. 442 U.S. 735, 745-46 (1979). A reasonable landline phone customer realizes that phone companies have access to and likely store data regarding the phone numbers dialed by each customer. Thus, no landline customer has a reasonable expectation of privacy in the numbers he dials. *Id.* at 745; *see also Maynard*, 615 F.3d at 561 (discussing *Smith*). Similarly, a reasonable cellular phone customer presumably realizes that his calls are transmitted by nearby cell-site towers, and that cellular phone companies have access to and likely store data regarding the cell-site towers used to place a customer's calls. Thus, under *Smith*, CSLI constitutes information voluntarily rendered to a third-party cellular phone company, and government collection of that data from the third-party phone company is not a "search" under the Fourth Amendment.[5] *But see In re United States Order*, 736 F. Supp. 2d at 589 (distinguishing *Smith* and finding a privacy interest in historical CSLI for the purposes of the Fourth Amendment).

An individual's decision to place a cellular phone call and thus provide information regarding his location to the phone company thus defeats an individual's privacy interest in that information. However, even without this consideration, the CSLI at issue here differs in important respects from the GPS tracking involved in *Maynard*. The Court in *Maynard* argued that "[p]rolonged surveillance of a person's movements may reveal an intimate picture of his life. . . . A reasonable person does not expect anyone to monitor and retain a record of every time he drives his car, including his origin, route, destination, and each place he stops and how long he stays there . . . ." *Maynard*, 615 F.3d at 563. Disclosure of historical CSLI for limited numbers of specific calls, on the other hand, does not paint such a detailed portrait of an individual's life. Historical CSLI like that sought by the government here does not provide a

---

[5] The government here does not seek CSLI for all times the relevant cell phone was turned on. *Cf. United States v Forest*, 355 F.3d 942, 951-52 (6th Cir. 2004) (noting that, unlike CSLI tied to dialed cellular phone numbers, an individual does not voluntarily convey CSLI that is automatically recorded whenever a phone is active).

record of a cell phone user's each and every destination, or the length of time he remains there. Instead, historical CSLI reveals only an approximate position from which a user placed a call, and is silent as to the duration spent in transit from one place or another. Like a blank connect-the-dot image, historical CSLI comprises an incomplete and scattershot image of an individual's travels, lacking sufficient detail to provide the "intimate picture" envisioned in *Maynard*. They thus do not amount to the sort of intrusion on privacy that under *Maynard* implicates the Fourth Amendment.[6]

### C. Specific and Articulable Facts

The Court in its September 12 Order reversed Magistrate Judge Facciola's order and granted the government's application without remand because the Court found that the government had submitted sufficient specific and articulable facts. Section 2703(d) only permits a court to issue a disclosure order upon the government's submission of "specific and articulable facts showing that there are reasonable grounds to believe that the contents of . . . the records or other information sought[] are relevant and material to an ongoing criminal investigation." The government's factual recitation in its original motion tended to show that accomplices assisted ███████████████████; that one such accomplice, the owner of cellular telephone number ███████████████████████████(two days prior to the attempted robbery) regarding ████████████████████ on the morning of ██████; and that shortly after sending that text message, the owner of the █████ ████ number engaged in a series of calls with the owner of the targeted cellular phone number.

---

[6] *But see, e.g., In re United States Order*, 736 F. Supp. at 595 ("[T]he difference between continuous location tracking and the tracking of a person's location at particular points in time is ultimately unpersuasive as a basis on which to distinguish *Maynard*."). This case would present a closer question if the government applied for disclosure of every cell phone call placed over a more prolonged period of time. *See id.* at 578 (noting that the government sought CSLI for all calls and text messages over a 58-day period).

There were thus reasonable grounds to believe that the subject of those latter calls was the ███████████████████████████, and that the owner of the targeted cellular phone number was an accomplice to ███████ attempted armed robbery. The government upon receiving CSLI and other information within the requested time period could thus further corroborate the occurrence of those calls.

Additionally, and more importantly, the government in its original motion alleged that a ████████████████████████████████████████████████████████ ███████████ CSLI and other information for the phone number targeted in the government's original motion could have provided evidence regarding whether the targeted number made or received that call – a potentially crucial detail in the government's investigation. *Cf. United States v. Suarez-Blanca*, Crim. No. 07-23, 2008 U.S. Dist. LEXIS 111622, *2-3 (N.D. Ga. Mar. 26, 2008) (involving application in which government alleged that a suspect spoke on a cellular phone during the commission of a crime).

The corrected facts presented by the government in its September 16 amended motion, however, do not indicate that the government's investigation uncovered evidence that ████ or any of the principals in the armed robbery used a cellular phone in connection with that crime. In the absence of such evidence or any further information, the government's amended motion does not support its claim that the CSLI and other information sought would be material to the investigation. The government may not seek CSLI and other related records simply by alleging that the user of a cellular telephone has committed a crime. The Section 2703(d) standard instead requires the government to explain why the information sought is likely to bear on the investigation at hand. Here, there is no more reason to believe that the requested cellular phone records will be material and relevant to the ████ investigation than there would be in any

12

investigation in which a suspect is a cellular phone subscriber. Based on the amended motion alone, the Court would deny the government's application and affirm Magistrate Judge Facciola's Order.

However, in its September 30 Proffer of Facts, the government notes that based on the training and experience of the FBI agents involved in the investigation, armored truck robberies are generally planned in advance and entail surveillance of truck routes. Therefore, the government posits, there is a reasonable articulable belief that the information sought will indicate whether ███ engaged in any such surveillance. Whether this additional assertion is sufficient to meet the government's evidentiary burden is a question for Magistrate Judge Facciola to resolve in the first instance. Accordingly, the Court will reverse the Order and remand the matter to Magistrate Judge Facciola for further consideration.

III. **CONCLUSION AND ORDER**

For the reasons discussed above, it is hereby

**ORDERED** that the government's Motion to Vacate is **GRANTED**, and this Court's Memorandum and Order filed September 12, 2011 is hereby **VACATED**; and it is

**FURTHER ORDERED** that the government's Amended Motion for Review is **GRANTED**; and it is

**FURTHER ORDERED** that the Magistrate Judge's August 17, 2011 Order is **REVERSED**; and it is

**FURTHER ORDERED** that the case be **REMANDED** to Magistrate Judge John Facciola for further proceedings not inconsistent with this opinion; and it is

13

**FURTHER ORDERED** that the Clerk's office shall not make any entry on the public docket in this case of this Order, until further order of this Court.

**SO ORDERED** this 3rd day of October 2011.

ROYCE C. LAMBERTH
Chief Judge
United States District Court

*Redacted Version signed This 12th day of October, 2011*

*Royce C. Lamberth*
*U.S.D.J.*